FILED
2012 Jul-03  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

RANDY SCOTT SIMMONS,        )
                        )
        Plaintiff,        )
                        )
     v.               )     CIVIL ACTION NO. 11-G-2631-NE
                        )
MICHAEL J. ASTRUE,         )
Commissioner of Social Security,     )
                        )
        Defendant.     )
                        )
                        )

## MEMORANDUM OPINION

The plaintiff, Randy Scott Simmons, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  <u>Bloodsworth</u>, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth,</u> at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether he has a severe impairment;

(3)    whether his impairment meets or equals one listed by the Secretary;

(4)    whether the claimant can perform his past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

2

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The

Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the

Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  <u>Id</u> at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  <u>Id.</u>  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As <u>Varney</u> recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  <u>Id.</u>  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 46 years old at the time of ALJ Cynthia G. Weaver's decision.  She found that the plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD) and asthma. [R. 16].  The plaintiff filed his

application for disability benefits on June 30, 2009, claiming an onset date of May 5, 2009.

On July 29, 2009, the plaintiff was examined at the behest of the Commissioner by Bharat K. Vakharia, M.D., who diagnosed chronic cough, and a history suggestive of allergic bronchitis. [R. 225]. Dr. Vakharia stated that post inflammatory asthma cannot be ruled out. Id. The ALJ noted, "Dr. Vakharia did not place any restrictions or limitations on the claimant." [R. 18]. Indeed, Dr. Vakharia offered no opinion on how the plaintiff's impairments result in functional limitations, and nowhere in her decision did the ALJ state what weight, if any, she was affording Dr. Vakharia's report.

The plaintiff's treating pulmonary specialist, Laurence C. Carmichael, M.D., has treated the plaintiff since 2006 for recurrent bronchospasms, COPD, and asthma. [R. 208-209]. Throughout his treatment, Dr. Carmichael noted the plaintiff's inability to afford his prescribed Advair, and Dr. Carmichael gave him samples of Symbicort. Id. On July 6, 2009, Dr. Carmichael noted "[m]ild to moderate obstruction with severe restriction." [R. 209]. On September 17, 2009, Dr. Carmichael completed a Pulmonary Residual Functional Capacity Questionnaire. [R. 257-260]. Dr. Carmichael's diagnosis was COPD and lists a FEV equal to 1.53. [R. 257]. Symptoms included shortness of breath, wheezing, rhonchi and coughing. Id. Dr. Carmichael thought the plaintiff was capable of low stress jobs. [R. 258]. He thought the plaintiff could sit at least six hours and stand and walk less than two hours a day. [R. 259]. He would have to

take unscheduled breaks "at least hourly" for 10 minutes, and he could carry less than 10 pounds occasionally, and 20 pounds rarely.  <u>Id.</u>  Dr. Carmichael said the plaintiff would likely be absent from work more than four days a month because of his impairments. [R. 260].

On September 7, 2010, Dr. Carmichael filled out a second Pulmonary Residual Functional Capacity questionnaire.  He stated he had last seen the plaintiff on March 9, 2010, for 30 minutes. [R. 262].  His diagnosis was bronchitis and hemoptysis, with underlying asthma.  <u>Id.</u>  Symptoms were shortness of breath, wheezing, rhonchi, episodic acute asthma and bronchitis, and coughing.  <u>Id.</u>  Dr. Carmichael thought the plaintiff would have acute asthma attacks monthly, and would be incapacitated for a "week or so." [R. 263].  This time, he estimated the plaintiff could stand and walk less than two hours, and sit about four hours in an eight-hour day. [R. 264].  The plaintiff could lift 10 pounds occasionally and 20 pounds rarely.  <u>Id.</u>  Again, the thought the plaintiff would have good days and bad days, and would be expected to be absent from work more than four days a month. [R. 265].

The ALJ addressed Dr. Carmichael's opinion:

> Dr. Charmichael's opinion is given some weight; however, the severity of the limitations is without substantial support from the physician's own treating records or other medical evidence of record, which obviously renders it less persuasive.  In fact, treatment notes reflect that the claimant's condition had improved (Exhibit B16F), which is inconsistent with the physician's opinion.  The undersigned notes that the pulmonary RFC was completed and signed over six month [sic] since the claimant had been to see Dr. Carmichael, and therefore cannot be based upon a current medical evaluation.

[R. 18].

Then, the ALJ summarized the plaintiff's treatment with Dr. Carmichael:

On July 1, 2009, pulmonary specialist, Dr. Carmichael noted that the claimant had been seen occasionally with asthmatic bronchitis and some COPD.  On examination, the claimant had a few scattered rhonchi and wheezes.  The physician noted that the claimant was out of medication. During a follow-up visit, Dr. Carmichael indicated the claimant had mild to moderate obstruction with severe restriction; however, his baseline spirometry was basically unchanged since December 2008 (Exhibit B2F, page 3).  In August 2009, the claimant had hyperinflated lungs, with decreased breath sounds.  Dr. Carmichael advised the claimant to continue Symbicort (1-2 puffs twice a day) and ProAir, as needed.  Treatment notes in November 2009, reflect that the claimant was doing fairly well.  Dr. Carmichael noted decreased breath sounds, but no active wheezing.  In March 2010, the physician noted that the claimant had developed cough and congestion with hemoptysis.  He was diagnosed as having acute bronchitis with associated hemoptysis, and he was prescribed Doxycycline.  Dr. Carmichael advised the claimant to return if his hemoptysis was not totally resolved (Exhibit B16F).  The undersigned notes that Dr. Carmichael reviewed chest [x] rays that showed hyperinflation, but no obvious infiltrate, or mass lesions (Exhibit B16F, page 1).

The records reflect that the claimant's recent office visits appear to have been simply for medication refills.  The undersigned finds it interesting that the diagnosis changed and improved from the 08/11/09 visit where it was "moderate obstruction with severe restriction," to "COPD" on 11/23/09, and finally on the last visit 03/09/10 it was "what I suspect is acute bronchitis with associated hemoptysis."  This noted improvement in the claimant's conditions as recorded in the longitudinal medical records is at odds with the second Pulmonary RFC (Exhibit B17F).  It is also interesting to note that Dr. Carmichael refers throughout his records to the claimant having a "regular physician" in Moulton, Dr. Garland Hall, however, there are 110 medical records in the file from Dr. Carmichael.  In addition, the claimant testified that he went to see Dr. Carmichael every other month, however, the medical records show only one visit in 2006, one in 2008, three in 2009 (Exhibits B2F and B16F), and only once in 2010 (B16F). This scarcity of medical treatment is again not indicative of a seriously debilitating impairment.

[R. 20].

For the ALJ to characterize a "change" in diagnosis from "moderate obstruction with severe restriction" to "COPD" to "acute bronchitis with associated hemoptysis" shows a misunderstanding of chronic obstructive pulmonary disease.  Dr. Carmichael's opinion is not contradicted by any treating, consulting or examining source. It is clear that the ALJ "succumbed to the [forbidden] temptation to play doctor and make [her] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).  Dr. Carmichael is a specialist in the field of pulmonology, and his opinion is entitled to more weight in this area.[1]  Because the ALJ's reasons for rejecting the testimony of the plaintiff's treating pulmonary specialist are not supported by substantial evidence, as a matter of law, Dr. Carmichael's testimony is taken as true.

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of  claimant's treating physicians:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).

---

[1] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist."  20 C.F.R. § 404.1527(d)5)

The ALJ failed to properly refute the opinion of the plaintiff's treating pulmonary specialist, Dr. Carmichael.  At the hearing, the vocational expert testified that a person with the plaintiff's limitations as diagnosed by Dr. Carmichael could not perform any job that exists in the national economy. [R. 55, 56].

**CONCLUSION**

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 3 July 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.